In the Matter of the Estate of MALKY LYONS, Deceased.

Surrogate's Court, Kings County, February 2, 1935.

*Albert W. Pross*, for Albert W. Pross and another.

*Frederick A. Keck*, special guardian for Sylvia Dorice Spiegel and others.

*Rosenson & Lorence*, for Joseph G. Lyons and another.

WINGATE, S. The question of testamentary interpretation here presented for decision is the familiar one of the extent to which a will containing trusts which potentially involve an infringement of the perpetuity provisions of section 42 of the Real Property Law and section 11 of the Personal Property Law, may be sustained.

Testatrix had four children, Annie, Lewis, Joseph and Nathaniel. To each she bequeathed an equal interest in her burial plot. The residue of her estate she directed to be divided into four equal parts. The first she gave to Nathaniel outright. The second and third she erected into trusts with Lewis and Annie, respectively, as primary life tenants, and the last she erected into a trust with two named children of Joseph as life tenants.

Aside from the bequest of a last resting place, she made no gift to her son Joseph.

This son now contends that the entire residuary direction is void by reason of alleged invalid directions for secondary life estates of the trust for Lewis and Annie, and that, therefore, substantially the entire estate passes in intestacy. This would give this substantially disinherited son one-quarter of the preponderant bulk of the property which the testatrix indicated she wished to have pass to others.

The primary taint of the will which Joseph contends transforms the entire testamentary direction into an object fit only for the refuse heap consists of provisions in the trusts for Lewis and Annie, that on their respective deaths secondary life estates shall come into being in equal parts of the principal sums originally dedicated to them for their surviving children. It is only upon the deaths of these surviving children of the primary life tenants that the remainders of the several trusts are to vest in possession. Upon these eventualities the remainders are distributable to " such child's descendants."

The secondary life estates are clearly bad, since tested by the rule of possibility (*Matter of Terwilligar*, 135 Misc. 170, 175; affd., on opinion of this court, 230 App. Div. 763; *Matter of Davison*, 134 Misc. 769, 771; affd. on opinion of this court, 230 App. Div. 868; *Matter of Milhau*, 151 Misc. 283, 286, 287), it is plain to be seen that the remainders may not vest in possession during the lives of two persons in being at the death of testatrix, since children of her children, Lewis and Annie, who may be born subsequent to her death, are within the description of those who, by the terms of the will, are entitled to receive such secondary life estates. (*Matter of Davison, supra*, p. 772; *Matter of Mann*, 138 Misc. 42, 46; *Matter of Wickham*, 139 id. 729, 731; *Matter of Milhau*, 151 id. 283, 287.)

The question thereupon arises as to the extent to which this partial invalidity will taint the entire testamentary disposition. It is primary that in the ordinary case an invalid secondary life estate will be eliminated and the balance of the will upheld. (*Matter of Drake*, 153 Misc. 691, 692; *Matter of Terwilligar, supra*, p. 182; *Matter of Enright*, 139 Misc. 192, 199; *Matter of Milhau*, 151 id. 283, 288, and authorities cited.)

The only familiar exception to this rule occurs in those cases in which the invalid directions are so inextricably interwoven with the valid that upon their deletion the entire testamentary scheme would be unbalanced. (*Matter of Enright*, 139 Misc. 192, 199; *Matter of Perelman*, 148 id. 906, 908.) The governing criterion in this connection is tersely stated in the words of Judge (now Chief Judge) CRANE in *Matter of Durand* (250 N. Y. 45, 53): " The dominant, underlying principle in all these cases is to carry out as far as possible within the meaning of the statute, the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question."

The inquiry, then, in the case at bar is as to whether testatrix would have wished her will to stand if the benefits provided for unnamed secondary life tenants of two of the trusts could not be effectuated, or whether she would have preferred that her estate should pass as intestate property.

As the court reads this will, testatrix demonstrated eight dominant wishes, four positive and four negative, two secondary intentions and three subordinate inclinations. The four affirmative dominant wishes were that Nathaniel should receive one-quarter outright, Lewis should have the use of one-quarter for life, Annie should have the use of one-quarter for life and that her grandchildren Irene and/or Doris should have the life use of the final quarter for life. The four negative dominant wishes were that Joseph should receive no part of her estate other than a place for burial, and that Lewis, Annie and Irene and/or Doris should not have the outright possession of the portions dedicated to them. The two secondary intentions were that the surviving children of Lewis and Annie should enjoy secondary life uses of the portions set up for their parents, and the three subordinate inclinations were that the grandchildren of Lewis and Annie and the children of Irene and/or Doris should receive the ultimate possession of three of the shares.

If the contentions of Joseph were to be upheld, seven of the eight dominant wishes of testatrix would be defeated as well as all of the secondary and subordinate intentions. If it be determined that the original trusts are to be sustained, all of her primary desires will be effectuated as well as one of the subordinate inclinations, the only portions exercised being the two invalid secondary life estates and the ultimate distribution to the grandchildren of Lewis and Annie. Indeed, it is not improbable that the last named will be substantially effectuated.

Between two such alternatives, the choice is obvious. The primary life uses of the trusts for Lewis and Annie must be sustained.

Since the remainder gifts of these trusts, being to their grandchildren living on the termination of the life estates is a gift to a class (*Matter of Weil*, 151 Misc. 841, 850; *Matter of Fleishfarb*, Id. 399, 402; *Matter of Harris*, 138 id. 287, 288; *Matter of Leonard*, 143 id. 172, 183, 184), the particular persons to be benefited are incapable of present ascertainment, the remainders cannot be accelerated (*Matter of Terwilligar*, 135 Misc. 170, 184; affd. on opinion of this court, 230 App. Div. 763; *Matter of Mann*, 138 Misc. 42, 46; *Matter of Wickham*, 139 id. 729, 731; *Matter of Burling*, 148 id. 835, 844; *Matter of Kramer*, 153 id. 606, 608; *Matter of Drake*, Id. 691, 693), and must pass as intestate property. (*Matter of McCafferty*, 142 Misc. 371, 381; affd., 236 App. Div. 678; *Matter of Hartfield*, 139 Misc. 214, 218; *Matter of Smallman*, 141 id. 796, 799; *Matter of Weil*, 151 id. 841, 848.)

Enter decree on notice accordingly.